DARIUS PEARCE *versus* DANIEL SAVAGE.

Under a devise, *in trust*, to executors for the children of the testator, till the youngest shall arrive at the age of twenty-one years, (the executors, in the mean time, to manage the estate, and receive the income,) the executors took a fee simple estate *in trust*, defeasible when the youngest child should come to the age of twenty-one years.

A notice to foreclose a mortgage, which states, "that the condition had been broken, and now the mortgagees give notice of the same, and that they claim a foreclosure of said mortage," is sufficient.

The person entitled to a vested remainder, has an immediate fixed right to future enjoyment, which passes by deed.

Though mortgagees may be joint tenants, yet, when the mortgage is foreclosed, they hold the estate in common.

The receipt of a mortgagee, acknowledging satisfaction of the debt secured by the mortgage, is not conclusive evidence of its discharge, but is open to explanation.

Where the mortgager, or one claiming under him, is entitled to redemption, the remedy is not in a suit at law, but by bill in equity.

WRIT OF ENTRY, dated Sept. 20, 1856, and the action was entered at the October term, of the same year. By agreement of parties, the case was tried as though commenced Oct. 6, 1857, and the date of the writ to be changed to that day. Plea, general issue, with a brief statement, and request to find the improvements, and the value of the land without them.

The case was taken from the jury, the parties agreeing, that it should be submitted to the full Court, on the Report of APPLETON, J., of the evidence.

The demandant read in evidence:—

1. The will of Elias Bates, dated May 31st, 1823, and codicil, dated Nov. 12, 1823, and second codicil, dated Nov. 18, 1823; and it was admitted that the legal title to the premises demanded, was in said Elias Bates, at the time of his decease.

2. Deed of mortgage, Winslow Bates to Benjamin D. Whitney and Joseph Richardson, of Boston, partners, under the

firm name of Richardson & Whitney, dated and acknowledged March 3, 1834, and recorded on the fifth of the same month.

3. A certified copy of a published notice, by said Richardson & Whitney, dated Oct. 20, 1840, to foreclose the said mortgage, which was objected to by the counsel for tenant, on the ground that the notice was not in compliance with the provisions of the statute, as it does not state the cause for which the foreclosure is claimed. The objection was overruled, so far as to admit the evidence. The notice was in usual form to the last sentence, which stated " that the condition has been broken, and now the said Richardson & Whitney give notice of the same, and that they claim to foreclose said mortgage."

4. Deed of Benjamin D. Whitney to demandant, dated and acknowledged Aug. 29, 1855, and recorded on the 5th of September following, for the consideration of $200, — which deed was objected to by tenant's counsel — for that, if the grantor had any interest, it was only a joint tenancy with Joseph Richardson, which could not be legally conveyed to a third person. The objection was overruled, and the deed admitted.

5. And also, deed of Joseph Richardson to demandant, (subject to the same objection by tenant's counsel,) dated Sept. 5, 1857, and recorded Sept. 11, 1857.

6. The Probate record of the report of Lorenzo Sabine and others, commissioners appointed by the Judge of Probate for the county of Washington, to make division of the real estate of Elias Bates among his children, dated April 10, 1840.

The demandant here rested his case. Whereupon, the tenant moved for a *nonsuit*, which the Court refused to direct.

The tenant then introduced the following, viz.: —

1. Deed from Henry Bates, 2d, now Winslow Bates, dated and acknowledged March 26, 1831, and recorded March 30, 1831, to Wooster Tuttle and Ezra Whitney, on condition that said Henry should faithfully perform his trust and agency, to which he had been appointed by said Tuttle and Whitney, to

settle and collect any demands against or in favor of the
estate [of said E. Bates,] and to let and manage the real
estate, &c.

2. Deed from said Tuttle and Whitney to Thomas G. Hath-
away, dated April 11, 1840, acknowledged same day, and
recorded May 6, 1840.

3. Lease from T. G. Hathaway to tenant, dated Nov. 6,
1841, of demanded premises.

4. Deed, Thomas G. Hathaway to tenant, dated April 30,
1853, of the same, acknowledged before Winslow Bates on
the same day, and recorded June 11, 1853.

Much other evidence, including depositions, five accounts
settled in Probate Court, and receipts, letters, &c., which, not
being alluded to in the opinion of the Court, are here omitted,
except that demandant put in a release of Wooster Tuttle, as
executor of the estate of Elias Bates, to Winslow Bates, and
in which said Tuttle does "for himself, his heirs, executors and
administrators, remise, release and quit-claim unto the said
Winslow Bates, his heirs and assigns, all actions and causes of
action, and all claims or demands whatever, both at law and
in equity, which against said Winslow Bates I ever had, now
have, or which I, my heirs, executors or administrators can,
shall or may have, claim or demand, for or by reason of any
act, matter or cause or thing, from the 28th day of March,
A. D., 1831, to the date of these presents. In witness where-
of, I, the said Wooster Tuttle, have hereunto set my hand and
seal, this 26th day of October, A. D., 1839.

                              "Wooster Tuttle, and seal.

"Signed and sealed in the presence of A. Calkins, S. Buck-
man.

"Acknowledged before Sam'l Buckman, J. P., Oct. 26, 1839."

The demandant also put in a receipt signed by Ezra Whit-
ney to Winslow Bates, his agent, in full of all debts, dues,
claims and demands against said Bates, on account of his
agency, from the 28th of March, 1831, to Oct. 23, 1839.

It was agreed, by the parties, that the full Court should be
authorized to draw such inferences from the evidence legally

admissible, as a jury would be authorized to draw, and enter a nonsuit or default according to the legal rights of the parties.

*A. Hayden,* for the demandant, argued —

That the declarations of a person from whom the party claims title, made before a conveyance from such person, are admissible, but must be pertinent to the question of title. And that the declarations of Winslow Bates, prior to the date of his mortgage to Richardson & Whitney, might be admissible, but not afterwards.

The account of Bates, of an apparent balance of $21,14, is only an account of receipts and expenditures; does not purport to be a final adjustment, and contains no charge for his services, which was $250 per year. That there was no evidence of a breach of condition; but that, on the 13th of March, 1834, ten days after his mortgage to Richardson & Whitney, there was a balance in his favor of $152,46.

The condition of the deed to Tuttle and Whitney had been faithfully performed, and the deed is, therefore, void. The release of Tuttle and the receipt of Whitney, the two executors of the estate of Elias Bates, establish this position.

Admitting that, on the 10th of October, 1832, there was in the hands of W. Bates the sum of $21,14, his retaining that sum was no breach of the condition of his deed. His agency still continued. No demand for the payment of the money was made. The condition is, after reciting that the executors had authorized said Bates, [Winslow,] *to collect and settle any demand in favor of, or against said estate, also, to let any dwellinghouse or store, or any other real or personal property belonging to the same;* the said Henry (Winslow) to be at all times under the advice and control of said executors, — then follows this condition — " If the said Henry (Winslow) shall *faithfully and honestly* perform the above trust and agency, then this deed is to be null and void, otherwise it shall *remain* absolute."

Is there the slightest ground for alleging that, having in his

hands $21,14, the agency continuing and no demand having been made, is proof that he had not, up to that time, "faithfully and honestly" performed the trust. The statement of such a proposition answers it.

But, we contend, that *paying over to the executors money collected is not a part of the condition*. When a forfeiture follows the condition of a bond, or, what is the same thing, where the performance of a condition is to make a deed void, and is, therefore, in the nature of a forfeiture, it will be construed strictly.

The condition is not that Bates shall pay over the money collected. The object the executors intended to secure was evidently not that. They wished to secure his honesty and faithfulness in managing the estate with third persons; willing to trust to the personal responsibility of the agent to pay over any balance which might be in his hands when the agency terminated.

The condition, viz., *the honesty and faithfulness* of the agent, is presumed to be fulfilled, until the contrary is shown.

The will provided for the support and education of the heirs, and a part of the agent's duty was to make payments for these purposes. The executors, in their account, have charged nothing for payments thus made, which will account for the apparent balance of $1960, stated to be in the agent's hands, in the executors' final account, settled Jan. 25, 1840.

The deed of Bates to the executors could only avail them as security, up to the time of his conveyance to Richardson & Whitney, March 3, 1834, and if, up to that time, he had "honestly and faithfully" executed his trust and agency, the title he conveyed to Richardson & Whitney was as good as if the deed to the executors had not been made. The deed is in the nature of a mortgage, to secure future advances, which is only good for advances made up to the time of a subsequent conveyance by the mortgager.

It is objected by the tenant, that the deed of B. D. Whitney to demandant is not good, because Richardson did not join in it, and that they, being joint tenants, cannot convey their in-

terest by separate deeds, executed at different times. To this we answer: —

(1.) A joint tenant may convey his moiety, and thus sever the tenancy by destroying the unity of title. 1 Hilliard's Ab. 437, § 52.

(2.) The subsequent deed of Richardson would confirm this, if confirmation were necessary, and bring the whole title into demandant. It it were one deed, executed at different times by the two grantors, it would, undoubtedly, be good, and there is no difference between two deeds and one deed executed by different grantors at different times.

(3.) They are not joint tenants. The only ground on which it is claimed that they are joint tenants, is, that they were partners. But a conveyance to partners, whatever it may be by common law, does not make them joint tenants against the language of the statute, which provides that a joint tenancy can only be created by express words. This is expressly decided in *Blake* v. *Nutter*, 19 Maine, 16, and it has been held that, even at common law, the doctrine of survivorship and rights of partnership creditors does not attach to real estate held by partners, even when bought with partnership funds.

(4.) But it may be said that, being a mortgage, they are joint tenants.

*Kinsley* v. *Abbott*, 19 Maine, 430, decides expressly that, although before foreclosure the estate is joint, yet, after foreclosure, they hold as tenants in common. See, also, *Goodwin* v. *Richardson*, 11 Mass. 469. In *Randall* v. *Philips*, 3 Mason, 378, STORY, J., holds that, in the mortgage, even before foreclosure, they are tenants in common, and that, at death, the land goes to the heir, the debt to the administrator, the land being subject to the heir for the debt.

In *Rigden* v. *Vellier*, 2 Vesey, 258, Judge HENDRICKS held that its being a mortgage, instead of raising a presumption of joint tenancy, had just the contrary effect.

Was the deed of W. Bates to Richardson & Whitney void, because it was executed before the youngest child of Elias Bates arrived at the age of 21 years? and, if so, can the

tenant, claiming title under a later deed, from the same party, and made under the same circumstances, avail himself of this defence ?

By the original will, it appears that the testator intended to give his children equal shares in his real estate, — no intermediate estate is devised, — so that, unless a fee passed to them at his death, the estate, from his death to the coming of age of the youngest child, remained *undevised.* This would be contrary to the rule of construction of wills, viz. : — that the testator is presumed to intend to devise his *whole* estate, unless, by the language of the will, a different construction is forced upon the Court. *Pickering* v. *Langdon*, 22 Maine, 413.

The intention of the testator, that the children shall share equally in the value of the real estate, at the time the youngest shall come to the age of 21 years, is not frustrated by a conveyance like that to Richardson & Whitney, *subject to the conditions of the will.*

There is no devise to the executors of any estate, not even possession is given to them. It is only the care and management, with a qualified right to sell for the accomplishment of particular objects.

Even if the Court should construe the clause in the codicil as a devise of a chattel estate to the executors, with a qualified power to convey part in fee, it is clear that Winslow Bates had a vested remainder, subject only to the condition. Such an estate may be conveyed by deed. 3 Greenl. Cruise, 141.

The reasonable construction of the will, codicil and deed of Bates, seems to be this. The will devises the fee in equal shares to the children, as tenants in common, with restriction of partition and several possession, until the youngest comes of age, subject to the management and improvement of the executors, with a qualified power of sale for specified purposes, and Winslow Bates conveys his interest, subject to all these conditions.

If this is not the case, and the fee did not pass to Winslow

by the will, until the youngest child was of age, then a share of whatever part was undivised came to him as an heir at law of the testator, and, being the same portion of the estate as that devised, makes the complement of his title. At any rate, it seems clear that, at the death of Elias Bates, an interest in his real estate passed to Winslow, by devise or descent, or both, subject to whatever restrictions are contained in the will, and so long as he, being of full age, kept himself within the spirit of the restrictions, he could convey his interest. 3 Greenl. Cruise, 435.

The tenant, who claims title under a deed from the same Winslow Bates, made during the time that these restrictions, whatever they are, existed, cannot set up and avail himself of a defence, because thereby he avoids his own deed and becomes a mere trespasser. 14 Pick. 467, and citations.

Winslow Bates, at the time of the conveyance to Richardson & Whitney, appears to have been in the actual possession of the property, so far as to collect the rents thereof.

If we hold that the restriction of the power to sell was intended by the testators for the benefit of the several heirs, then only Winslow Bates can make the objection to the validity of the deed. A conveyance of his interest must be good as against third persons.

*J. Granger,* for the tenant.

The opinion of the Court was drawn up by

Tenney, C. J. — The testator, having, in his will of May 31, 1823, made certain specific devises of real estate, disposed of the residue thereof in the following language: — "I also give and devise unto my children, and their respective heirs and assigns, forever, all my real estate, not otherwise disposed of, in equal shares and proportions, when the youngest of them comes to the age of twenty-one years; and it is my will, that my real estate shall not be divided among them, until my youngest surviving child, in case of the decease of any of them, arrives at the age of twenty-one years; it is also my will, that

my children, nor any of them shall have power to sell, alien-
ate or convey in any way or manner whatsoever, or cause the
same to be divided, his or her part of any real estate, until
my youngest surviving child comes to the age of twenty-one
years. And it is my will, that each one's proportion of the
rents and profits of my real estate, shall be paid to my chil-
dren, respectively, when they arrive at the age of twenty-one
years, and to my daughters at the time of their marriage."
The testator nominated, constituted and appointed his friends,
Wooster Tuttle and Ezra Whitney, jointly and severally, to
be his executors of said last will and testament.

In a codicil to the same will, the persons appointed therein
executors, and the survivor of them, were authorized, empow-
ered and requested, to take into their care and management,
all the real estate of which the testator should die possessed,
and make all such contracts or agreements, as they should
think most for the interest of his children, by renting or leasing
all or any part of his real estate, for such term or number of
years as they shall think best, and for the best rent which can
be obtained, — to make any contracts or agreements with the
lessees for any buildings, or improvements to be made there-
on by the lessees, and for the purchase or sale of the same
buildings, or improvements, at the end of the term respective-
ly; and they were further authorized and empowered to make
such improvements upon all or any part of his real estate, by
repairing buildings, completing any unfinished one, erecting
buildings, rebuilding, enclosing and fencing as they shall deem
proper, and so as to render the same productive, by afterwards
leasing or renting them.

So far as the will, in this case, confers upon the persons who
were constituted the executors thereof, and who accepted the
trust, and who were duly qualified to act in that capacity, the
care and management of the real estate, so devised, its effect
is similar to that of the will referred to in the case of *Deer-
ing* v. *Adams,* 37 Maine, 264, in which it was held, that the
executors took, under the will, a fee simple estate in trust, de-
feasible at the end of twenty years, the term, during which, by

the will, the estate was not to vest in her grandchildren, and, by the authority of that case, the executors under the will, in the case at bar, took a similar estate in trust, defeasible when the youngest surviving child came to the age of twenty-one years, which was Sept. 20, 1839, the testator having died Dec. 13, 1823, and his will having been duly proved, approved and allowed on March 18, 1824.

The premises in question were a part of the real estate of which Elias Bates died possessed, and, on March 26, 1831, Henry Bates, 2d, afterwards Winslow Bates, his son, made, executed and delivered to Wooster Tuttle and Ezra Whitney, as executors of the will of Elias Bates, a mortgage of all his right, title and interest to and in the estate of the said Elias Bates; " the condition of the deed being such, that, whereas the said Tuttle and Whitney, executors as aforesaid, having appointed the said Henry Bates, 2d, (one of the legatees of said Elias Bates,) their agent, and having authorized the said Henry to collect and settle any demands in favor or against said estate, also to let any dwellinghouse or store, or any other real or personal property, belonging to the same, the said Henry Bates to be at all times under the advice and control of said executors, if the said Henry shall faithfully and honestly perform the above trust and agency, then the deed to be null and void, otherwise to remain absolute."

On March 3, 1834, the same Henry Bates, 2d, then Winslow Bates, made, executed and delivered to Joseph Richardson and Benjamin D. Whitney, their heirs and assigns forever, for security of his note to them, for the sum of $2548,74, of the same date, and interest in one year, all right, title and interest, which he had, as one of the heirs in the estate of his father, Elias Bates, deceased, by virtue of his last will and testament, or otherwise.

A notice was published, and recorded according to law, on Nov. 15, 1840, for the purpose of foreclosing the mortgage to Richardson & Whitney, and, notwithstanding it is objected that it was insufficient, in matter of substance, to answer the requirement of the statute, we think otherwise.

A notice, for the purpose of effecting a foreclosure of the mortgage to Tuttle and Whitney, was duly published, and was recorded on Aug. 30, 1841, by Thomas G. Hathaway, who married a daughter of Elias Bates; Tuttle and Whitney having assigned to him the mortgage from Henry Bates, 2d, on April 11, 1840.

On Nov. 6, 1841, Thomas G. Hathaway leased his interest in the premises in dispute, to the tenant, for the term of twenty-one years; and, on April 30, 1853, in consideration of the sum of six hundred dollars, conveyed to him the same, with covenants of warranty.

On Aug. 29, 1855, Benjamin D. Whitney, one of the mortgagees in the mortgage of Winslow Bates to Richardson & Whitney, released to the demandant all his interest in the premises demanded, in a deed of that date, with a covenant of non-claim; and, on Sept. 5, 1857, Richardson, the other mortgagee, did the same, in a deed in all respects similar.

It does not appear, that Winslow Bates, or those claiming under him, took possession of the demanded premises, or was in occupation thereof; but, it appears, that after the deed from Tuttle and Whitney to T. G. Hathaway, in the fall of 1840, the tenant went into possession of the same, by the permission of Hathaway, and has continued in possession since that time.

The case contains no evidence of the payment of the note of Winslow Bates to Richardson & Whitney, secured by his mortgage to them; and there is none that it was not paid.

Wooster Tuttle, by an instrument under seal, dated Oct. 26, 1839, remised, released and quit-claimed unto Winslow Bates, all actions and causes of action, and all claims or demands whatever, both at law and in equity, or otherwise, he ever had against him, then had, or which his heirs, executors or administrators can, shall or may have, claim or demand, for or by reason of any act, matter, cause or thing, from the 28th day of March, 1831, to the date of the release.   Ezra Whitney, on Oct. 23, 1839, acknowledges the receipt, from Winslow Bates, as his agent, of the sum of $44,69, in full for

his account against the estate of E. Bates, to the date thereof, and in full for all debts due, claims and demands against said Bates, on account of his agency, from the 28th of March, 1831, to the date of the receipt. But it does not appear that the mortgage, given to Tuttle and Whitney, was ever formally discharged.

Was the mortgage to Richardson & Whitney, by Winslow Bates, entirely ineffectual? He undertook therein to do nothing forbidden by the will, but to convey all the right, title and interest, which he had under the same, as one of the heirs or otherwise, to the real estate therein described. His interest was in the nature of a vested remainder, the will having provided that, after the youngest surviving child should become of the age of twenty-one years, he, and his heirs and assigns forever, should be entitled to his share in the real estate. The person entitled to a vested remainder has an immediate fixed right of future enjoyment;—that is, an estate *in presenti*, though it is only to take effect, and pernancy of the profits, at a future period, and charged much in the same manner as an estate in possession. 2 Cruise, 188.

It is said, by Chancellor KENT, 4 Com. p. 254, 1st ed., "a vested remainder, lying in grant, passes by deed, without livery, — but a contingent remainder is a mere right, and cannot be transferred, before the contingency happens, otherwise than by way of estoppel." R. S. of 1841, c. 91, § 4.

Winslow Bates, by his father's will, had an immediate, fixed right of future enjoyment of his share in the estate; that enjoyment to commence when the estate in trust of the executors should be determined. By the assignment of his right in the mortgage, the assignees could take the right which he had, and no other, subject to his right of redemption. This in no wise conflicted with the devise in the will of the testator's real estate. He intended that it should remain entire and undivided, with no power to sell or alienate in his children, till the youngest survivor of them should arrive at the age of twenty-one years. At that time the restriction was to be removed, and they could possess the estate and dispose

of the same.   The basis of a division was to be the value of the estate, at that time, and not before.

It is objected, in behalf of the tenant, that the deed of B. D. Whitney, of August 29, 1855, releasing to the demandant, with a covenant of non-claim, all his interest in the premises; and that of Joseph Richardson, on Sept. 5, 1857, also releasing his interest, with a similar covenant, are without effect, they having been made at different times by those, who, it is insisted, were joint tenants.   If their mortgage was foreclosed, and the title absolute in them, that foreclosure operated as a new purchase, and the grantees held the estate afterwards as tenants in common. . *Goodwin* v. *Richardson*, 11 Mass. 469; *Kinsley* v. *Abbott*, 19 Maine, 430; R. S. of 1841, c. 91, § 13.

But the deed to Tuttle and Whitney, of March 26, 1831, in mortgage by Henry, alias Winslow Bates, was prior in time to that to Richardson & Whitney, and was of "all my right, title and interest, to and in the estate of said Elias Bates." All the interest of the mortgager, so far as the case discloses, was the right, title and interest under his father's will; and this was all which he attempted to convey.   His covenants of warranty extended no further. *Coe, pet'r for par.*, v. *persons unknown*, 43 Maine, 432.   The covenant of seizin in no wise operated injuriously to the mortgagees, as they were in possession as devisees in trust, under the will; and, being such, the enjoyment under the deed was to commence *in futuro*. It is not perceived that their right of possession, under the will, till the testator's youngest surviving child should arrive to the age of twenty-one years, could in any way prevent their enjoyment, when that event should take place.   That deed was effectual, in the same manner, and to the same extent, that the one to Richardson & Whitney would have been, if the latter was the only one from Winslow Bates, was prior to the other, or the former had been discharged.

If the mortgage to Tuttle and Whitney has been foreclosed, the legal title became absolute in them, or those claiming under them, and has come to the tenant indefeasible; and this action

must fail for want of title in the demandant. But if this mortgage is now outstanding and undischarged, it is still open to redemption, and the right to redeem has passed from Richardson & Whitney to the demandant.

If, on the other hand, the condition in the mortage to Tuttle and Whitney was never broken; or if the mortgager, or the one claiming under him, has done all which is required to entitle him to redemption, and to be admitted to the possession, which has been in the tenant for more than seventeen years, his remedy is not in a suit at law, but in a bill in equity. *Hill* v. *Payson & al.*, 3 Mass. 359; *Perkins & al.* v. *Pitts*, 11 Ibid. 134; *Parsons* v. *Wells & al.*, 17 Mass. 419; R. S. of 1841, c. 125, § 16.

The receipt of a mortgager, acknowledging satisfaction of the debt secured by the mortgage, is not conclusive evidence of a discharge of the mortgage, so as to defeat the title under it; but it is competent for the mortgagee to explain the transaction, by showing the nature of the satisfaction received. *Perkins & al.* v. *Pitts*, before cited. This he cannot be called upon to do in a suit at law.

Other questions of law are presented by the report, which have been argued, but their consideration is not important for the final disposition of this action.

According to the agreement of the parties, the plaintiff must be                                    *Nonsuit.*

RICE, APPLETON, CUTTING, and GOODENOW, J. J., concurred.